IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORGE SOTO, ) | |
| ) | |
| Plaintiff, ) | Case No. 20 C 770 |
| v. ) | |
| ) | |
| H.G. SALGADO, A.R. SANTIAGO, E.J. ) | Hon. Jorge L. Alonso |
| OKON, R.A. PRUGER, F. ESCOBEDO, E. ) | |
| LEIGHTON, C. VELAZQUEZ, M. ) | |
| ROMERO, ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| ROCIO PENA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 20 C 771 |
| ) | |
| H.G. SALGADO, A.R. SANTIAGO, E.J. ) | |
| OKON, R.A. PRUGER, F. ESCOBEDO, E. ) | |
| LEIGHTON, C. VELAZQUEZ, M. ) | |
| ROMERO, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Jorge Soto and Rocio Pena, bring these consolidated suits pursuant to 42 U.S.C. § 1983, claiming that defendants, several Chicago police officers, violated plaintiffs' constitutional rights by using excessive force to arrest them, denying them access to medical care, conspiring to commit constitutional violations and failing to intervene in each other's violations. Defendants have moved for summary judgment. For the following reasons, the motion is granted in part and

denied in part. The motion is granted as to the claims against defendants Leighton, Velazquez, Okon, and Romero and the claims of conspiracy and denial of medical care against defendants Santiago and Salgado. It is denied as to the claims of excessive force and failure to intervene against defendants Santiago and Salgado.

## BACKGROUND

The parties have submitted statements of material facts and responses pursuant to Northern District of Illinois Local Rule 56.1. Based on these statements and responses, the following facts are undisputed, unless otherwise noted.

On February 12, 2018, plaintiff Rocio Pena was in her apartment in Chicago with plaintiff Jorge Soto and Samuel Rivera, when her landlords heard a commotion coming from her unit. After hearing screaming and the sound of glass breaking, one of the landlords called 911.

Defendant Chicago police officers Aladino Santiago and Herman Salgado responded to the 911 call, knocking on the door of Pena's third-floor apartment and announcing their office. Pena opened the door, but when Santiago asked her to explain what was going on, she shut it immediately. Pena opened the door again, and Santiago and Salgado asked her what was going on. Pena, Soto, and Rivera all came to the door. Pena and Soto shouted at Santiago and Salgado to leave, with Soto loudly and aggressively asking to see a warrant. Rivera attempted to grab Pena, but Pena pushed him away instead of stepping back into the apartment. As Pena and Soto continued to yell at Santiago and Salgado, the officers descended the staircase.

Pena, Soto, and Rivera followed Santiago and Salgado down the stairs. Soto repeatedly yelled, "where's the warrant," "CPD killer," and "Fuck CPD." He told Rivera, as they descended the stairs, to "lock the door on these [n-word]." Upon reaching the landlords' apartment, which

2

was two floors below Pena's, Pena banged on the door loudly and repeatedly. Santiago opened the door at the bottom of the stairwell leading out to the gangway and stood in the doorway, calling to Salgado. Instead of exiting, Salgado climbed back up the stairs to approach Pena. Here the parties' accounts diverge: defendants claim that Pena pushed Salgado in the chest, whereas plaintiffs claim that Salgado lunged at Pena and pulled at her arm, while Rivera tried to separate them. A scuffle ensued, and after a moment, Salgado was able to handcuff Pena's right wrist to the stairwell hand railing.

Meanwhile, Santiago was at the bottom of the stairs with Soto. Santiago ordered Soto to go upstairs and back off. Here, again, the parties' accounts diverge: defendants claim that Soto refused all commands, turned his back to Santiago, and moved to block him from ascending the stairs to assist Salgado with Pena and Rivera, which forced Santiago to attempt to subdue him; plaintiffs claim that Soto turned around to follow Santiago's commands, leaving room on the stairway for Santiago to go around him, but Santiago grabbed Soto from behind, choking and beating him with his baton. Rivera descended to the bottom of the stairwell where Santiago was engaged with Soto, and Salgado followed. The two officers attempted to subdue Soto, radioing for assistance, as Rivera interfered, attempting to separate them. As the struggle continued, Salgado pushed Soto through the door at the bottom of the stairwell and into a prone position in the gangway outside. Salgado and Santiago handcuffed Soto.

Defendant officers Cosme Velazquez, Eddie Okon, Edward Leighton, and Miguel Romero arrived on the scene. Velazquez's body-worn camera video shows that, as he opened the gate and entered the gangway, an officer was attempting to control Soto on the ground. The officer then stood up and re-entered the stairwell, leaving Soto unattended. Soto was shouting, writhing, and

3

attempting to roll over, and Velazquez held him in place while the officers cleared the stairwell and gangway. Then, Velazquez, Okon, Romero, and another officer, George Castro, lifted Soto and carried him down the gangway and toward the gate leading to the sidewalk and street. Defendants argue that Soto was continuing to resist; plaintiffs contend that Soto was not resisting. As they reached the gate, Soto asked the officers to put him down and let him walk because he promised he would "stop kicking." (Pl.'s Ex. 12, Okon Video, at 3:06-14.) The officers put Soto down and let him walk out to the patrol car.

Salgado and Santiago returned to the stairwell, where Pena was cuffed to the railing. Santiago grabbed Pena by the hair as he and Salgado uncuffed her from the railing and cuffed her hands behind her back. Salgado escorted Pena to a patrol car.

Santiago and Salgado transported Pena to the 10th district police station. While en route, she felt pain in her hands, which began to swell. Soto was also transported to the station, where Velazquez escorted him inside and handcuffed him to a railing. Soto claims to have asked repeatedly for medical attention, without receiving any immediate response from any of the officers at the station. Pena was later transported to St. Anthony's Hospital, where she was diagnosed with a fracture to her hand. Soto was transported to Mt. Sinai Hospital, where he was diagnosed with a nasal fracture and an arm fracture.

Plaintiffs filed separate complaints against several of the officers involved in their arrests, asserting claims of violations of their constitutional rights under 42 U.S.C. § 1983 for using excessive force, denying them access to medical care, conspiring to violate their constitutional rights and failing to intervene in the constitutional violations. The parties have stipulated to dismiss the claims against defendants Escobedo and Pruger, leaving the claims against defendants Salgado,

4

Santiago, Okon, Leighton, Velazquez, and Romero.

## ANALYSIS

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). A genuine dispute is one that could change the outcome of the suit and is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010).

"Section 1983 creates a species of tort liability," *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (internal quotation marks omitted), against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983. Defendants argue that they are entitled to summary judgment because there is no genuine material factual dispute as to whether they used force that exceeded constitutional standards, unconstitutionally denied plaintiffs access to medical care, failed to intervene in any constitutional violation, or conspired to commit one. Further, defendants argue, even if plaintiffs did suffer any violation of their constitutional rights, defendants are entitled to qualified immunity.

I. **Excessive Force And Derivative Claims**

A "claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012). "A court must evaluate whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting that officer." *Gupta v. Melloh*, 19 F.4th 990, 995-96 (7th Cir. 2021) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The evaluation "'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Gupta*, 19 F.4th at 996 (citing *Graham*, 490 U.S. at 396).

A. **Santiago and Salgado**

Defendants argue that Santiago and Salgado's use of force in arresting plaintiffs was not excessive given the level of hostility and aggression plaintiffs displayed during the encounter. Plaintiffs respond that their behavior did not warrant the level of force Santiago and Salgado used, if any, because their resistance was no worse than passive, at least until the officers used force against them first.

Both sides rely on the video recordings of the encounter captured by the officers' body-worn cameras: defendants argue that the footage shows that plaintiffs were hostile and both verbally and physically aggressive during the encounter, whereas plaintiffs argue that it shows

6

Santiago and Salgado to have been the first to use physical force and to have used more than was reasonably necessary.

"'A conclusive video allows a court to know what happened and decide the legal consequences.'" *Smith v. Finkley*, 10 F.4th 725, 730 (7th Cir. 2021) (quoting *Johnson v. Rogers*, 944 F.3d 966, 967, 969 (7th Cir. 2019)). Courts do not make findings of fact at the summary judgment stage, but neither need they "indulge stories clearly contradicted by [video] footage" that "firmly settles a factual issue." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018)). But videos are not always conclusive; they are "sometimes unclear, incomplete, and fairly open to varying interpretations." *Smith*, 10 F.4th at 730 (quoting *Horton*, 883 F.3d at 944). "[A] video that is ambiguous or 'not wholly clear' can be relied on only for those facts that can be established 'with confidence' and 'beyond reasonable question.'" *Smith*, 10 F.4th at 730 (quoting *Johnson*, 944 F.3d at 967, 969).

The fact that both sides rely on the same portions of the same video footage is not a promising sign for defendants' motion for summary judgment, and, sure enough, the video evidence in this case is of the sort that "does not hand a slam dunk to either party." *Gupta*, 19 F.4th at 998. It is true, as defendants argue, that the video shows plaintiffs to have been belligerent and confrontational almost from the beginning of the encounter, without any apparent provocation by the officers, who simply asked what was going on. While it is not difficult to believe that Santiago and Salgado interpreted plaintiffs' belligerence as threatening, the Court must beware "the siren song that tempts courts into making factual determinations at the summary judgment phase." *Id.* at 996 (citing, *inter alia*, *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021) ("[N]o matter how tempting it might be on summary judgment to be distracted by the sparkle of

seemingly compelling facts, our assigned task is to take the facts in the light most favorable to the non-moving party.")). The video recordings do not provide a full and complete view of the incident, including certain key moments that are critical to determining what level of force was appropriate in the totality of the circumstances. For example, it is unclear whether Pena pushed Salgado first, or whether Salgado lunged at Pena first. Similarly, it is unclear whether Soto moved to block Santiago from climbing the stairs to assist Salgado, or whether Santiago choked him from behind, without Soto initiating any physical contact.

Although the objective reasonableness of an officer's use of force to make an arrest is a pure question of law, *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007), it is not an appropriate issue for resolution on summary judgment if it depends on disputed issues of material fact such as "how much force [the officers] used and what level of force [they] needed to use to effectuate the arrest." *Gupta*, 19 F.4th at 996. Where the "critical inquiry . . . requires a resolution of precisely those facts about which the parties disagree," summary judgment is inappropriate. *Id.* Here, the situation was "chaotic," and plaintiffs were hardly "'docile and cooperative,'" but nevertheless it is not clear that the circumstances warranted the amount of force the officers used at certain points in the encounter. *See Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) (reversing grant of summary judgment for officer who used significant force to arrest plaintiff where jury could reasonably conclude that plaintiff had done nothing more threatening than to tell the officer to get out of his face and leave him alone) (quoting *Morfin v. City of E. Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003)). Disputed issues of material fact preclude summary judgment for Santiago and Salgado on the excessive force claims against them.

Similarly, disputed issues of fact preclude summary judgment on plaintiff's claims that

Salgado and Santiago failed to intervene in each other's use of excessive force. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that excessive force was being used, . . . *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Defendants argue that Santiago and Salgado had no realistic opportunity to intervene in each other's use of force, given that the situation was fast-changing and chaotic. It is true that the situation was fluid and fast-moving, but the Seventh Circuit has "made clear that . . . '[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury *could not possibly conclude otherwise*." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Lanigan v. Village of East Hazel Crest, Ill.,* 110 F.3d 467, 478 (7th Cir. 1997) (emphasis added in *Abdullahi*)). Having reviewed the evidence and watched the body-worn camera footage, the Court cannot say that no reasonably jury could possibly conclude that Santiago and Salgado could have intervened to stop the other's use of excessive force at some point.

Santiago and Salgado argue that, even if they are not entitled to judgment on the excessive force claims as a matter of law, they are entitled to qualified immunity, which "shields officials from civil liability [under § 1983] so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). But the same factual disputes preclude summary judgment on the basis of qualified immunity. Although plaintiffs were verbally resisting from the beginning of the encounter, there are critical factual disputes about how much force defendants used and what level

9

of force was necessary and appropriate at which point in the encounter, based on the level of noncompliance or (potentially) passive resistance plaintiffs were then displaying, if any. It has long been clearly established that the use of "significant force is unreasonable" if it is unprovoked or provoked only by passive resistance. *Gupta*, 19 F.4th at 1001; *see Phillips*, 678 F.3d at 529 (citing cases); *see also Taylor v. Riojas*, 141 S. Ct. 52, 52-54 (2020) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (explaining that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to specific conduct in question") (internal quotation marks omitted)). In this case, the Court lacks the necessary "concessions about the facts of provocation or resistance" that would permit a conclusion on the issue of objective reasonableness as a matter of law. *Gupta*, 19 F.4th at 1001. Before the Court can determine whether defendants are entitled to qualified immunity, a jury must resolve these disputed issues of fact. *See id.*; *see also Strand v. Minchuk*, 910 F.3d 909, 918-19 (7th Cir. 2018) (citing *Warlick v. Cross*, 969 F.2d 303, 305 (7th Cir. 1992) ("When the issue of qualified immunity remains unresolved at the time of trial, as was the case here, the district court may properly use special interrogatories to allow the jury to determine disputed issues of fact upon which the court can base its legal determination of qualified immunity.")).

On the claim of conspiracy to use excessive force, however, the Court agrees with defendants that plaintiffs have not come forward with sufficient evidence to survive summary judgment. "To sustain a claim that defendants conspired to deny plaintiff[s'] constitutional rights, plaintiff[s] must allege that defendants 'directed themselves toward an unconstitutional action by virtue of a mutual understanding[,]' and support such allegations with facts suggesting a 'meeting of the minds.'" *Thurman v. Vill. of Hazel Crest*, 570 F. Supp. 2d 1019, 1029 (N.D. Ill. 2008)

10

(quoting *Amundsen v. Chi. Park Dist.,* 218 F.3d 712, 718 (7th Cir. 2000)). "A conspiracy claim cannot survive summary judgment based on vague conclusory allegations that include no overt acts reasonably related to promoting the conspiracy." *Id.* "Evidence of an agreement may be circumstantial, but it must be more than speculative." *Todero v. Blackwell*, 383 F. Supp. 3d 826, 839 (S.D. Ind. 2019) (citing *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)). Here, there is, at most, evidence of "concurrent action," without evidence that the officers' concurrent action was coordinated pursuant to an agreement or "'mutual understanding.'" *See Todero*, 383 F. Supp. 3d at 839 (quoting *Akbar v. Calumet City*, 632 F. App'x 868, 872 (7th Cir. 2015)). This evidence is not sufficient to sustain a claim for conspiracy. *See id.*

### B. Soto's Claims Against Velazquez, Okon, Leighton, and Romero

Defendants Velazquez, Okon, Leighton, and Romero arrived on the scene only after Salgado had taken Soto down in the gangway outside the stairwell. Plaintiffs do not mention Leighton in their response brief, apparently conceding that he is entitled to summary judgment, but they argue that Velazquez, Okon, and Romero used excessive force against Soto while he was lying prone in the gangway and when they carried him out to the sidewalk.

It appears from the body camera footage that Velazquez, Okon, and Romero arrived on the scene to find Soto apparently in the midst of active resistance, and there is no evidence that they did anything more than what was necessary to control the scene and remove him from it. Soto even seemed to admit on camera that he had been kicking. Plaintiffs have not come forward with evidence that would warrant a reasonable jury in finding Velazquez, Okon, Leighton, or Romero to have used excessive force. Summary judgment for these defendants is appropriate as to excessive force. It follows that summary judgment is appropriate on the derivative claims that they

failed to intervene in each other's use of excessive force or conspired to use excessive force, given the absence of evidence of an underlying violation.

## II. Denial of Medical Care

Both plaintiffs claim that they were denied access to medical care for the injuries they sustained in this incident. An officer's response to an arrestee's medical needs is constitutionally inadequate if it is objectively unreasonable, based on four factors: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011).

Defendants argue that Pena's claim for denial of medical care cannot survive summary judgment because there is no evidence that she ever requested medical care or that any of the defendants were on notice of her need for medical care. The Court agrees. There is no evidence that Pena complained to any defendant about the pain in her hands. Plaintiffs purport to cite evidence that Pena complained "that her arm was in pain to no avail" (Pls.' LR 56.1 Stmt. of Add'l Facts ¶ 80), but the evidence they cite consists merely of Pena's deposition testimony in which she affirmed the allegations of the complaint as they were read to her, including the allegation that she "complained that her arm was in pain to no avail" (Compl. ¶ 22). To survive summary judgment, plaintiffs must adduce evidence that suffices to show, at a minimum, that a particular defendant knew of her need for medical care and did not take steps to obtain it for her. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation.") (internal quotation marks omitted); *Johnson v. Purdue*, No. 21 CV 201, 2023 WL 4132802, at *6 (S.D. Ind. Jun. 22, 2023).

Plaintiffs have not come forward with sufficient evidence to sustain Pena's claim for denial of access to medical care.

Soto's claim of denial of medical care is similarly deficient. Plaintiffs cite evidence that Soto complained of his injuries to Velazquez upon arrival at the station, both while still in the police vehicle and after having been escorted into the station. But the video evidence shows that any complaints of injury that Soto may have made were in the nature of accusations, interspersed among other insults and recriminations, rather than what might reasonably have been interpreted as requests for medical attention. Plaintiffs have not pointed to evidence on which a reasonable juror could base a conclusion that any defendant was on notice of a need for medical treatment more urgent than the treatment Soto received. Defendants are entitled to summary judgment on both defendants' denial of medical care claims and any derivative claims, including claims for failure to intervene or conspiracy.

## **CONCLUSION**

For the foregoing reasons, defendants' motions for summary judgment (ECF No. 103, Case No. 20 C 770; ECF No. 69, Case No. 20 C 771) are granted in part and denied in part. The motions are granted as to all claims against defendants Leighton, Velazquez, Okon, and Romero and the claims of denial of medical care and conspiracy against defendants Santiago and Salgado. They are denied as to the claims of excessive force and failure to intervene against officers Santiago and Salgado. A status hearing is set for July 26, 2023.

**SO ORDERED.**                                            **ENTERED**: July 5, 2023

                                                                                   **HON. JORGE L. ALONSO**
                                                                                   **United States District Judge**